UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SANDRA SANCHEZ,

                    Plaintiff,

          v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

No. 18-CV-2027 (KMK)

<u>OPINION & ORDER</u>

---

Appearances:

Sandra Sanchez
Bronx, NY
*Pro Se Plaintiff*

Allison Rovner, Esq.
United States Attorney's Office, SDNY
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

Sandra Sanchez ("Plaintiff") brings this Action against the Acting Commissioner of

Social Security ("Defendant" or the "Commissioner"), pursuant to 42 U.S.C. § 405(g),

challenging the decision of an administrative law judge (the "ALJ") to deny Plaintiff's

application for disability insurance benefits on the ground that Plaintiff is not disabled within the

meaning of the Social Security Act ("SSA"), 42 U.S.C. § 423 *et seq.* The Court referred the case

to Magistrate Judge Judith C. McCarthy ("Judge McCarthy"), pursuant to 28 U.S.C.

§ 636(b)(1)(A). (Dkt. No. 7.) The Commissioner filed a Motion for Judgment on the Pleadings

(the "Motion"). (Comm'r's Not. of Mot. (Dkt. No. 14).) Judge McCarthy issued a Report and

Recommendation (the "R&R"), recommending that the Court deny the Commissioner's Motion

and remand the case for further proceedings consistent with her recommendation. (R&R 1 (Dkt.

No. 21).)  The Commissioner filed objections to the R&R on May 7, 2019.  (Comm'r's Obj. to R&R ("Comm'r's Obj.") (Dkt. No. 22).)

For the reasons discussed below, Judge McCarthy's R&R is adopted in part.

## I.  Background

Aside from some minor clarifications, the Court adopts the recitation of facts as set forth by Judge McCarthy.  (R&R 2–17.)  The Court assumes the Parties' familiarity with the facts and repeats only those facts relevant to consideration of the objections to the R&R raised by the Commissioner.

## II.  Discussion

### A.  Standard of Review

#### 1.  Review of Report and Recommendation

A district court reviewing an R&R addressing a dispositive motion "may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  Pursuant to § 636(b)(1) and Fed. R. Civ. P. 72(b), parties may submit objections to the R&R.  The objections raised must be "specific" and "written," and must be filed "[w]ithin 14 days after being served with a copy of the recommended disposition."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).

When a party submits timely objections to an R&R, the district court reviews de novo those portions of the R&R to which the party objected.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The district court "may adopt those portions of the . . . [R&R] to which no 'specific objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law."  *Eisenberg v. New Eng. Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P.

72(b)(2)); *Garcia v. Lee*, No. 11-CV-1803, 2018 WL 2268129, at *1 (S.D.N.Y. May 17, 2018)

(same). Objections raised "that are merely perfunctory responses argued in an attempt to engage

the district court in a rehashing of the same arguments set forth in the original petition will not

suffice to invoke de novo review of the [R&R]." *Vega v. Artuz*, No. 97-CV-3775, 2002 WL

31174466, at *1 (S.D.N.Y. Sept. 30, 2002) (citations omitted). Such arguments are considered

"frivolous, general, and conclusory." *Id*. (citations omitted).

### 2. Review of a Social Security Claim

In reviewing an ALJ's determination on a Social Security claim, it is not the function of a

reviewing court to "determine de novo whether [the claimant] is disabled." *Cage v. Comm'r of

Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (citation, alteration, and quotation marks omitted);

*Hernandez v. Berryhill*, No. 17-CV-5891, 2018 WL 6649620, at *8 (S.D.N.Y. Dec. 19, 2018)

(same) (citation, alteration, and quotation marks omitted). Rather, the Court is "limited to

determining whether the [ALJ's] conclusions were supported by substantial evidence in the

record and were based on a correct legal standard." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir.

2013) (quoting *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)). A court may overturn an

ALJ's determination only where it is "based upon legal error [or] not supported by substantial

evidence." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (citation omitted). "Substantial

evidence" is "more than a mere scintilla," and "means such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Lamay v. Comm'r of Soc. Sec.*, 562

F.3d 503, 507 (2d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In

considering whether substantial evidence supports the ALJ's determination, the reviewing court

must "examine the entire record, including contradictory evidence and evidence from which

conflicting inferences can be drawn." *Talavera*, 697 F.3d at 151 (citation and quotation marks

omitted).  Where the ALJ's factual findings are supported by substantial evidence, those findings "shall be conclusive."  42 U.S.C. § 405(g).  Accordingly, "once an ALJ finds facts," the court may "reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citation and quotation marks omitted) (emphasis in original).  In other words, "[i]f evidence is susceptible to more than one rational interpretation, the [ALJ's] conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (citation omitted).

Under the SSA, a claimant is considered disabled when such person lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). A person is eligible to receive disability benefits if the impairment suffered is of "such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

The ALJ evaluates a claimant's eligibility for disability insurance benefits pursuant to a five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations.  If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not 'listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000); *see also* 20 C.F.R. § 404.1520(a)(4)(i)–(v).

"The claimant bears the burden of proof on the first four steps, while the [Commissioner] bears the burden on the last step." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (citation omitted). At the last step, the Commissioner must prove that "that there is other gainful work in the national economy that [the claimant] could perform." *Kamerling v. Massanari*, 295 F.3d 206, 210 (2d Cir. 2002) (citation omitted); *see also* 20 C.F.R. § 404.1560(c)(2). If the ALJ determines that "significant numbers of jobs exist in the national economy that the claimant can perform," *McIntyre*, 758 F.3d at 151 (citation omitted), the ALJ must deny disability insurance benefits to the claimant, *see* 20 C.F.R § 404.1520(a)(4)(v).

B. Analysis

In her decision dated August 17, 2016, the ALJ followed the five-step procedure established by the Commissioner for evaluating disability claims. (*See* SSA Administrative Record ("Administrative Record") at 16–17 (Dkt. No. 10)).[1] At the first step of the inquiry, the ALJ found that Plaintiff had not engaged in substantial gainful activity since she applied for SSI. (Administrative Record 18.) At step two, the ALJ found that Plaintiff "has the following severe impairments: fibromyalgia, bony hypertrophy of the acromioclavicular joint and 5-mm type-1 acromioclavicular joint separation, left shoulder arthropathy, rotator cuff bursitis/tenosynovitis

_____

[1] Citations to the administrative record of proceedings relating to Plaintiff's application for social security refer to the record page numbers, stamped in bold at the bottom-right corner of the page.

with partial tears, hypertension, depression, and mild sleep apnea." (*Id.* (citation omitted).) At step three, the ALJ found that Plaintiff did not "have an impairment or a combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1." (*Id.*)[2]

At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 26 (citation omitted).) At step five, the ALJ relied upon the vocational expert's testimony that Plaintiff could perform work that exists in significant numbers in the national economy. (*Id.*)[3] The ALJ, therefore, concluded that Plaintiff was not disabled. (*Id.* at 27.)

In the R&R, Judge McCarthy concluded that the ALJ erred by (1) failing to give the opinions of Plaintiff's treating physicians controlling weight, and (2) by discounting Plaintiff's credibility regarding her subjective statements about her pain. (R&R 21–31.) Judge McCarthy further concluded that, moreover, the ALJ should re-evaluate her conclusion regarding Plaintiff's credibility. (*Id.* at 28–31.) The Commissioner objects to each conclusion. (*See generally* Comm'r's Obj.) The Court finds that these objections are sufficiently detailed to allow

---

[2] In making the step-three determination, the ALJ considered Plaintiff's physical and mental impairments. In particular, the ALJ considered Listings 1.02 (joint dysfunction) and 12.04 (depressive and related disorders). (Administrative Record 18–20.) The ALJ also considered Plaintiff's activities of daily living (cooking, dressing, cleaning, bathing, grooming, managing money, and taking public transportation), her social functioning (socializing and talking with others), her concentration, persistence or pace (complaints of depression, memory, insight, judgment, intellectual functioning, maintaining concentration and attention, performing complex tasks independently, learning new tasks, distractibility, lack of motivation, and physical impairments) and episodes of decompensation. (*Id*. at 19–20.)

[3] In making the step-five determination, the ALJ considered Plaintiff's residual functional capacity, age, education, and work experience. (*Id.* at 26–27.) A vocational expert testified that an individual with Plaintiff's characteristics would be able to perform the requirements of occupations such a sorter, marker, or hand packager. (*Id.* at 27.) The ALJ concluded that work exists in significant numbers in the national economy to which Plaintiff could make a successful adjustment. (*Id.*)

meaningful de novo review of the R&R.  *See Vega*, 2002 WL 31174466, at *1.  This Court addresses each issue separately.

### 1.  The Treating Physician's Rule

#### a.  Applicable Law

The Social Security Administration "recognizes a rule of deference to the medical views of a physician who is engaged in the primary treatment of a claimant."  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).  Under this rule, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'"  *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting C.F.R. § 404.1527(d)(2)).  Consequently, an ALJ reviewing a claim for disability benefits must likewise generally give "deference to the medical opinion of a claimant's treating physician."  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citation omitted).  However, "the opinion of the treating physician is *not* afforded controlling weight where" the opinion is "not consistent with other substantial evidence in the record, such as the opinions of other medical experts."  *Id.* (citations omitted) (emphasis added); *see also Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011) (same); *Illenberg v. Colvin*, No. 13-CV-9016, 2014 WL 6969550, at *20 (S.D.N.Y. Dec. 9, 2014) ("When a treating physician's opinion is internally inconsistent or inconsistent with other substantial evidence in the record, the ALJ may give the treating physician's opinion less weight." (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999))).

If the ALJ declines to give controlling weight to a treating physician's opinion, the ALJ must consider a number of factors in determining how much weight the opinion is due,

including the frequency of examination and the length, nature, and extent of the treatment relationship; the evidence in support of the opinion; the opinion's consistency with the record as a whole; whether the opinion was from a specialist; and any other factors that "tend to support or contradict the medical opinion."  20 C.F.R. § 404.1527(c).  The ALJ need not recite each factor. *See Halloran*, 362 F.3d at 32 (concluding that "the substance of the treating physician rule was not traversed" even though it was "unclear on the face of the ALJ's opinion whether the ALJ considered (or even was aware of) the applicability of the treating physician rule"); *see also Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear." (citation omitted)).

### b.  Analysis

#### i.  Dr. Hamilton

Plaintiff saw Dr. Hamilton for approximately five years beginning in February 2009, (Administrative Record 313–14), through February 2014, (*id*. at 555).  On February 24, 2014, Dr. Hamilton completed an impairment questionnaire in which she opined that Plaintiff's left shoulder pain and fibromyalgia interfered with Plaintiff's ability to participate in a competitive workplace.  (*Id.* at 555, 557–58).  According to Dr. Hamilton, Plaintiff could not sit or stand continuously in a work setting or lift objects and must get up and move around every 15-20 minutes.  (*Id.* at 557–58).  Dr. Hamilton indicated that Plaintiff's prognosis for a full recovery was poor and her pain was not remedied by medication.  (*Id.* at 555, 557).  In support of her opinion, Dr. Hamilton cited MRI results of Plaintiff's left shoulder from March 30, 2013.  (*Id*. at 556).  The ALJ afforded the opinion of Dr. Hamilton, one of Plaintiff's treating physicians, only "some weight."  (Administrative Record 24.)  The ALJ reasoned that Dr. Hamilton's findings

were inconsistent with consultative examinations, which found fewer restrictions just two months after the questionnaire was completed. (*Id*.) She also found that Dr. Hamilton's recommendation of excessive breaks was not supported by evidence that Plaintiff could complete household chores, take public transportation, and walk independently. (*Id*.). Finally, the ALJ stated that some of Dr. Hamilton's assessment was based on Plaintiff's self-report rather than Dr. Hamilton's own evaluation of Plaintiff. (*Id*.). Judge McCarthy addressed this issue and concluded that, because the ALJ failed to provide "'good reasons' for discounting the opinion testimony of Dr. Hamilton," the ALJ erred in her determination. (R&R 22 (quoting *Aung Winn v. Colvin*, 541 F. App'x 67, 70 (2d Cir. 2013) (quotation marks omitted).)

According to Judge McCarthy, "[t]he ALJ reasoned that Dr. Hamilton's findings were inconsistent with Dr. Nikkah's consultative examination, which found fewer restrictions just two months after the questionnaire was completed" and "that Dr. Hamilton's recommendation of excessive breaks was not supported by evidence that Plaintiff could complete household chores, take public transportation, and walk independently."[4] (*Id*. (citation omitted)). Judge McCarthy found that it was improper for the ALJ to discount Dr. Hamilton's opinion because the ALJ "failed to provide good reasons" for doing so and only nominally considered one "[o]f the five factors enumerated in 20 C.F.R § 416.927." (*Id*. (citations and quotation marks omitted).)[5]

---

[4] The Commissioner argues that "the Magistrate Judge is incorrect in stating that the ALJ found Dr. Hamilton's opinion, regarding Plaintiff's physical functioning, to be inconsistent with psychiatrist Dr. Nikkah's opinion, regarding Plaintiff's mental functioning. The ALJ's analysis of Dr. Hamilton's opinion nowhere refers to Dr. Nikkah's report, but rather references exhibit 17F, which is the report of consultative examiner, Dr. Mescon." (Comm'r's Obj. 12.) However, the same sentence in the ALJ's decision cited Ex. 16F, the report of Dr. Nikkah, to support her conclusion that "Dr. Hamilton's recommendation of excessive breaks is not supported by evidence that the claimant is able to complete household chores [] [and] take public transportation." (Administrative Record 24.)

[5] The Commissioner argues that Judge McCarthy "failed to acknowledge controlling Second Circuit precedent stating that the opinions of consultative sources may override the

Judge McCarthy concluded that "[t]he ALJ does not adequately explain why she chose to credit the opinion of a one-time consultative examiner over Plaintiff's longtime treating physician beyond stating that the two opinions were inconsistent with one another." (*Id.* at 23.)[6,7] Contrary to the Commissioner's argument that Judge McCarthy "failed to recognize that

opinions of treating sources provided they are supported by substantial evidence, as Dr. Mescon's opinion was." (Comm'r's Obj. 13.) However, Judge McCarthy was referring to the inconsistency between Dr. Hamilton's opinion and that of Dr. Nikkah, with no mention of Dr. Mescon. (R&R 22–23.)

[6] The Commissioner argues that Judge McCarthy "misapprehended relevant legal authority in disagreeing with the Commissioner that Dr. Hamilton had only treated Plaintiff a couple of times during the relevant time period" and "appeared to be under the incorrect impression that the relevant time period in this SSI case began with the alleged onset date of December 21, 2012, rather than the application date of February 1, 2014." (Comm'r's Obj. 13.) However, Judge McCarthy cites Dr. Hamilton's relationship in support of her comprehensive knowledge of Plaintiff's relevant medical issues. (R&R 23.) The cases cited in the Commissioner's objections are not on point. *See, e.g.*, *Frye v. Astrue*, 485 F. App'x 484, 485 n.1 (2d. Cir. 2012) (finding "[t]he earliest month for which SSI benefits could be paid would be the month following the month Frye filed A.O.'s application" because "[t]he relevant period in this appeal is . . . the date the SSI application was filed [] to . . . the date of the ALJ's decision" (citation omitted)); *Mitchell v. Colvin*, No. 14-CV-00011, 2017 WL 1963575, at *1 (W.D.N.Y. May 12, 2017) (beyond discussing the procedural history does not reference the issue of dates at all.)

[7] The Commissioner argues that Dr. Hamilton did not treat Plaintiff "a sufficient number of times during the relevant time period to acquire treating physician status," even if the doctor in question "treats plaintiff before and/or after the relevant time period." (Comm'r's Obj. 14.) However, the cases the Commissioner cites allege dissimilar facts. *See, e.g.*, *Arnone v. Bowen*, 882 F. 2d 34, 40–41 (2d. Cir. 1989) (concluding that doctor was not the treating physician where he performed part of the plaintiff's operation and monitored him for "some time" after surgery" because "[h]aving had no contact with [the plaintiff], [the doctor] is not in a unique position to make a complete and accurate diagnosis of [the plaintiff's] condition (citation and quotation marks omitted)); *Rogers v. Astrue*, 895 F. Supp. 2d 541, 549 (S.D.N.Y. 2012) ("Nonetheless, the fact that a treating physician did not have that status at the time referenced in a retrospective opinion does not mean that the opinion should not be given some, or even significant weight." (citations and quotation marks omitted)). Moreover, even if Hamilton was not deemed a treating physician, "the fact that a treating physician did not have that status at the time referenced in a retrospective opinion does not mean that the opinion should not be given some, or even significant weight." *Monette v. Astrue*, 269 F. App'x 109, 113 (2d Cir. 2008). Therefore, the Commissioner's argument that it is immaterial that the ALJ did not discuss Plaintiff's

Dr. Hamilton's opinion was unsupported by and inconsistent with other substantial record evidence besides Dr. Mescon's report," (Comm'r's Obj. 15), Judge McCarthy does note that Dr. Hamilton's opinion is inconsistent with that of Dr. Nikkah as well. (*See* R&R 22–23.)

Moreover, according to the Commissioner, "the ALJ also referenced when analyzing Dr. Hamilton's opinion that is was not entirely consistent with the record, specifically noting that the opinion did not appear to be based on Dr. Hamilton's own examination and evaluation." (Comm'r's Obj. 15.) The ALJ stated that some of Dr. Hamilton's assessment, reflected in the Multiple Impairment Questionnaire she filled out on February 24, 2014 was based on Plaintiff's self-report rather than Dr. Hamilton's own evaluation of Plaintiff. (Administrative Record 24.) Although the ALJ's consideration of this authorship issue was proper, *see Rivas v. Berryhill*, No. 17-CV-5143, 2018 WL 4666076, at *11 (S.D.N.Y. Sept. 27, 2018) ("The ALJ was entitled to afford less weight to [the treating physician's] assessments . . . because these assessments appeared to be solely based on Plaintiff's self-reported symptoms" (citation omitted)), here, the ALJ improperly discounted the totality of Dr. Hamilton's assessment. Judge McCarthy correctly noted that Dr. Hamilton's diagnosis was not wholly unsupported by or inconsistent with objective medical evidence; Dr. Hamilton's questionnaire included clinical findings that support Dr. Hamilton's diagnosis in addition to laboratory and diagnostic tests that support the diagnosis, corroborating Plaintiff's pain symptoms. (*See* R&R 5, 21–22; Administrative Record 555-56.) Therefore, Dr. Hamilton's consideration of Plaintiff's self-reported symptoms is not enough to discount her opinion because Plaintiff's self-reported symptoms were corroborated by objective medical data. *See* 20 C.F.R. § 416.929(a) ("In determining whether you are disabled, we

relationship with Dr. Hamilton or Dr. Hamilton's specialization is not applicable here. (*See* Comm'r's Obj. 14–15.)

consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . . [Although] statements about your pain or other symptoms will not alone establish that you are disabled[,] . . . objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged, [ ] when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.").

The Commissioner also argued that "Dr. Hamilton herself recorded normal examination findings just several days before providing her opinion." (Comm'r's Obj. 15–16.) It is true that sometimes an ALJ acts reasonably in discounting a treating physician's opinion based on a finding that the opinion was inconsistent with the physician's own treatment notes. *See Austin D. v. Comm'r of Soc. Sec*., No. 17-CV-881, 2019 WL 185831, at *6 (N.D.N.Y. Jan. 14, 2019) (declining to give treating physician's opinion controlling weight where the clinical findings showed that the plaintiff was not as limited as the opinion indicated); *see also Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (affirming ALJ's decision not to give controlling weight to treating physician's opinion where the physician's treating notes "directly contradict[ed] [his]" opinion). However, that is not the case here. Dr. Hamilton's opinion, which notes diagnoses for left shoulder separation and fibromyalgia, (*see* Administrative Record 555), is not inconsistent with her treatment notes regarding sporadic treatment for fibromyalgia, shoulder surgery, mild sleep apnea, and controlled hypertension, (*id*. 502–03, 508–09.) Moreover, regarding the Commissioner's objection that the ALJ correctly discounted Dr. Hamilton's opinion as based

primarily on Plaintiff's self-reporting, (*see* Comm'r's Obj. 16), Judge McCarthy noted that Dr.

Hamilton's opinion was not without medical evidence, specifically highlighting MRI results that

Dr. Hamilton cited regarding Plaintiff's left shoulder and Dr. Hamilton's physical examinations

of Plaintiff. (R&R 21–24.) Contrary to the Commissioner's arguments, although the ALJ

briefly acknowledged the existence Plaintiff's MRI, she did not do so in the context of evaluating

the credibility of Dr. Hamilton's conclusion or articulating why, despite the MRI results, she

found Dr. Hamilton's opinion not supported by objective medical evidence. (*See* Comm'r's Obj.

16 (citing Administrative Record 20–21, 556).) Additionally, although the Commissioner argues

that "it is also apparent from the ALJ's decision that she recognized that Dr. Hamilton's opinion

was consistent with others [sic] opinions expressing disabling limitations," in the portion of the

record that the Commissioner cites, the ALJ does not compare Dr. Hamilton's opinion to any

other opinions, (*see* Comm'r's Obj. 17 (citing Administrative Record 20–26).)

      Finally, Judge McCarthy noted that the ALJ concluded—without specifying how—that

Plaintiff could sit, stand, and walk 6 hours out of an 8-hour day, (R&R 23–24), despite the

possibility that Dr. Hamilton had marked the "0-1" hour option in the survey, (Administrative

Record 557). Judge McCarthy was correct in concluding that the confusing markings could have

been nothing more than a scrivener's error, one that the ALJ should have sought further

clarification about before concluding, without further reasoning, that Plaintiff was able to sit,

stand, and walk 6 out of 8 hours a day.[8] *See, e.g.*, *John v. Berryhill*, No. 17-CV-963, 2019 WL

---

[8] The Commissioner argues that "remand for further record development is not required"
because "regardless of what Dr. Hamilton meant to convey regarding this topic, the ALJ would
have concluded that Plaintiff could perform a job that allowed her to sit, stand, or walk for six
hours in an eight-hour workday, and certainly would not have concluded that Plaintiff had the
disabling conditions of being able to sit and stand/walk only 0-1 hours in an eight-hour
workday." (Comm'r's Obj. 17.) However, the cited cases do not pertain to the kind of
scrivener's error or inconsistency noted by Judge McCarthy; instead, they affirm decisions where

2314620, at *3 n. 4 (W.D.N.Y. May 31, 2019) ("[U]pon remand the ALJ should consider re-contacting [the doctor] to resolve the discrepancy in her . . . assessment concerning plaintiff's hand limitation.  Whereas she checked the box stating that plaintiff had an inability to perform fine and gross movements effectively, she also stated that she was unable to assess plaintiff's ability to use her hands for gross manipulation." (citations, alterations and quotation marks omitted)); *Puckhaber v. Berryhill*, No. 17-CV-576, 2019 WL 1316685, at *4 (W.D.N.Y. Mar. 22, 2019) (remanding the case to allow the ALJ to further develop the record because "if the ALJ had concerns about whether the boxes checked on a form adequately addressed the findings indicated by the checked boxes, it was incumbent on the ALJ to inquire further and not simply to dismiss the 'check-box' findings"); *Krawczyk v. Berryhill*, No. 17-CV-1311, 2019 WL 244491,

_____

the ALJ sufficiently articulated that they found certain medical opinions *generally* unreliable because of their inconsistency with treatment notes and/or other medical evidence.  *See, e.g.*, *Micheli v. Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012) (holding that remand to the ALJ was unnecessary where ambiguous assertions could be resolved against the plaintiff because the plaintiff's position was "not supported by the evidence in the record" and was contradicted by "a number of [other] findings"); *Tankersley v. Astrue*, 245 F. App'x 830, 833 (10th Cir. 2007) (discussing a scenario where missing checks from checkboxes could be "reasonably interpreted" to mean one singular conclusion and were not entirely inconsistent with each other); *Cosme v. Colvin*, No. 15-CV-6121, 2016 WL 4154280, at *5 n.4, 12 (W.D.N.Y. Aug. 5, 2016) (finding that ALJ's assessment of medical opinions was proper where, overall, the ALJ "adopted those limitations . . . that were supported by the record and declined to adopt those that were unsupported" (citation omitted)); *Nelson v. Colvin*, 14-CV-914, 2015 WL 3606386, at *8–9 (D. Or. June 4, 2015) (affirming ALJ's findings where the doctor's medical opinion merely pointed to and were inconsistent with his treatment notes); *Brito v. Colvin*, No. 13-CV-6501, 2015 WL 1470555, at *4 n.11, 28–29 (W.D.N.Y. Mar. 31, 2015) (affirming ALJ's decision to give little weight to a medical opinion that contained inconsistent markings primarily because the opinion was from a doctor who evaluated [the plaintiff] "on a single occasion"); *Cooper v. Astrue*, No. 10-CV-5048, 2011 WL 5838228, at *18–19 (W.D. Mo. Nov. 21, 2011) (discussing the overall merits of the ALJ's assessment, not whether ALJ bore the burden of seeking clarification about a potential scrivener's error).

Here, however, the crux of Judge McCarthy's analysis is that the ALJ did *not* specify sufficient grounds to discredit Dr. Hamilton's opinion, and, accordingly, that it is *also* problematic that the ALJ appeared to have resolved "an ambiguity [regarding the checkboxes] in Dr. Hamilton's opinion . . . against Plaintiff without comment."  (R&R 24.)

at *4 (W.D.N.Y. Jan. 17, 2019) ("[C]larification is required from [the treating physician assistant] as to the dates that he treated [the plaintiff], as it is ambiguous on the form he completed."); *Scott v. Astrue*, No. 09-CV-3999, 2010 WL 2736879, at *15 (E.D.N.Y. July 9, 2010) ("The absence of [the doctor's] explanatory notes should have elicited the ALJ's attention. By foregoing the opportunity to inquire further upon [the doctor's] 2008 wellness report to clarify the admittedly ambiguous opinion and by rejecting [the doctor's] opinion without fully developing the factual record, the ALJ committed legal error." (citations omitted)).

For the reasons stated above, Judge McCarthy correctly found that the ALJ should not have discounted the opinion of Dr. Hamilton without more discussion than what is present in the Administrative Record.

### ii.  Dr. Taylor

Dr. Taylor, Plaintiff's treating psychiatrist, provided a treating source statement on April 28, 2014.  (Administrative Record 563–64).  She opined that, based on her examination of Plaintiff and her review of Plaintiff's chart, Plaintiff was unable to work for at least 12 months due to her depression and fibromyalgia.  (*Id.* at 564).  The ALJ declined to give Dr. Taylor, one of Plaintiff's treating physicians, significant weight, concluding "[t]his opinion is given very little weight because although Dr. Taylor is a treating source, and therefore entitled to some consideration, her opinion is vague and speculative" because the opinion did not indicate "from when [Dr. Taylor found that Plaintiff] cannot work for 12 months" and did not present "evidence in the record that supports the finding that the claimant requires such extensive breaks."  (*Id.* at 24.)[9]  Judge McCarthy concluded that "remand is warranted to enable the ALJ to expressly

---

[9] The Commissioner is correct in arguing that the ALJ recognized Dr. Taylor as a treating source.  (*See* Comm'r's Obj. 18 (citing to Administrative Record 24).)

consider the requisite factors in weighing Dr. Taylor's opinion and obtain clarification from Dr.

Taylor for her opinion." (R&R 25.) In support of this finding, Judge McCarthy notes that the

ALJ did not address any of the "factors [used to evaluate treating physician's opinions] except

for providing a generalized statement that there was no evidence supporting Dr. Taylor's

conclusion that Plaintiff required excessive breaks"; "did not discuss the nearly two years' worth

of treatment notes provided by . . . Dr. Taylor's facility"; and "did not address Dr. Taylor's

specialty or the duration of her treatment." (*Id.* (citations omitted).) Moreover, Judge McCarthy

concluded "that remand is warranted to enable the ALJ to expressly consider the requisite factors

in weighing Dr. Taylor's opinion and obtain clarification from Dr. Taylor for her opinion."

(R&R 25.)

    Where a treating physician's opinion is deemed vague or unclear, "it is incumbent on the

ALJ to recontact the treating physician for clarification of his or her opinion," *Isernia v. Colvin*,

No. 14-CV-2528, 2015 WL 5567113, at *10 (E.D.N.Y. Sept. 22, 2015), and "vagueness alone

does not constitute 'good reason' not to give [a treating physician's] opinion controlling weight

given the ALJ's duty to develop the record to obtain clarifying information concerning any issue

that was vague in [the] opinion," *Page v. Colvin*, No. 15-CV-792, 2015 WL 9660016, at *5

(S.D.N.Y. Dec. 10, 2015) (citation omitted). Nowhere in the Administrative Record is there an

indication that the ALJ sought further clarification from Dr. Taylor about the "vague" aspects of

her opinion. (*See generally* Administrative Report.)

    The Commissioner argues that "[a]lthough the Magistrate Judge is correct that [the] ALJ

did not mention treatment notes from the Bronx Mental Health Clinic, where Dr. Taylor

practiced, when analyzing Dr. Taylor's opinion, the ALJ discussed these notes, found in Exhibit

26F, elsewhere in her decision, and acknowledged that Plaintiff was receiving therapy during the

16

relevant time period." (Comm'r's Obj. 19 (citations omitted)). However, the ALJ discussed these notes in the context of a completely different discussion, one about Dr. Tan's opinion and general medical evidence, and did not apply them to the evaluation of Dr. Taylor's opinion. (*See* Administrative Record 22, 25.) Judge McCarthy is correct that, without further explanation, it is unclear to what extent, if at all, the ALJ considered the medical records when determining that Dr. Taylor's opinion was too "vague" to deserve much weight. (*Id*. at 24.)

The Commissioner also argues that "[g]iven the ALJ's discussion of Dr. Taylor's treatment of [P]laintiff, [it] is also clear that the ALJ did not err by failing to mention Dr. Taylor's specialty as a psychiatrist." (Comm'r's Obj. 19.) This argument has some merit. Although the ALJ did not explicitly address Dr. Taylor's specialty or her treatment of Plaintiff, noting only that Plaintiff "was still being treated for depression," she did cite Exhibit 21F, which evinces Dr. Taylor's specialty as a psychiatrist and her diagnosis of Plaintiff with depression. (Administrative Record 24.) This establishes the ALJ's awareness of Dr. Taylor's specialty. *See Jones v. Colvin*, No. 16-CV-443, 2017 WL 758511, at *5 (N.D.N.Y. Feb. 27, 2017) ("The ALJ cited to [the doctor's] treatment records, and explicitly indicated that plaintiff treated with [the doctor] for her complaints of low back and bilateral lower extremity pain. . . . The ALJ's reference to these records reflects the ALJ's acknowledgment of [the doctor's] apparent specialty in treatment of spinal conditions. Accordingly, the Court declines to find that the ALJ improperly failed to consider [the doctor's] specialty." (citations omitted)); *see also Cote v. Berryhill*, No. 17-CV-1843, 2018 WL 4092068, at *17 (D. Conn. Aug. 28, 2018) ("The ALJ did not expressly discuss [the doctor's] psychiatry specialty, but it is clear that he understood [the doctor] to be plaintiff's treating psychiatrist. The ALJ discussed [the doctor's] psychiatric treatment and evaluation of plaintiff, citing to records that disclose [the doctor's] specialty,

which indicates that he was aware of that specialty." (citations omitted)).  Accordingly, the Court

agrees with the Commissioner that the ALJ can be presumed to have been aware of and

considered Dr. Taylor's specialty.

Nevertheless, overall, the Court agrees with Judge McCarthy that the ALJ's evaluation of

Dr. Taylor's opinion improperly discounted it as "vague" without articulating the requisite

factors that should inform an ALJ's evaluation of a treating physician's opinion.  Although it

may be true that the "final question of disability is . . . expressly reserved to the [ALJ]," *Snell*,

177 F.3d at 133–34, here, the ALJ gave "very little weight" to the entirety of Dr. Taylor's

opinions and findings without articulating "good reasons" for doing so, *id*. at 133 (quoting 20

C.F.R. § 404.1527(d)(2)).  Therefore, except for Judge McCarthy's statement that the ALJ must

specifically articulate and evaluate Dr. Taylor's specialty on remand, the Court agrees with the

R&R that the ALJ should seek clarification from Dr. Taylor regarding her opinion and expressly

consider the requisite factors in weighing such opinion.

### iii.  Dr. Megarr

Dr. Megarr completed a medical source statement on February 24, 2016, stating that

Plaintiff suffered from multiple joint pains and tendonitis.  (Administrative Record 637–41.)  Dr.

Megarr indicated that he had treated Plaintiff since 2012.  (*Id*. at 637, 641).  He opined that

Plaintiff required significant breaks during an 8-hour work day to relieve fatigue arising from her

medical impairments.  (*Id.* at 638).  He stated that emotional factors contributed to the severity of

Plaintiff's symptoms, that she was severely limited in her ability to deal with work stress, and

that she was unable to work continuously at a desk or table for more than fifteen minutes.  (*Id*. at

639).  According to Dr. Megarr, Plaintiff was also unable to carry more than five pounds, had

limited range of motion in her neck, and although she could occasionally reach, Plaintiff could

never stoop. (*Id.* at 640). Moreover, Dr. Megarr believed that Plaintiff would be absent more than three times a month from work due to her impairments. (*Id.* at 641).

The ALJ declined to give controlling weight to Dr. Megarr, one of Plaintiff's treating physicians, because, given the lack of treatment notes from Dr. Megarr, "the opinion appears to be based largely on the claimant's self-report" and "without evidence to corroborate these extreme restrictions, [Dr. Megarr's] opinion is not entitled to more than little weight." (Administrative Record 26.) The R&R addressed this issue and concluded that remand was necessary to fill in gaps in the record. Specifically, Judge McCarthy concluded that "the absence of treatment notes from Dr. Megarr . . . is an apparent gap in the administrative record that should have been addressed by the ALJ" and, moreover, "[t]here is no evidence in the record that the ALJ contacted Dr. Megarr or attempted to obtain treatment notes from him or his facility." (R&R 26.)

The ALJ has an affirmative obligation to develop the record. *See Burgess*, 537 F.3d at 128. For example, the ALJ must "seek additional evidence or clarification where the documentation from a claimant's treating physician, psychologist, or other medical source is inadequate to determine whether the claimant is disabled." *Velez v. Colvin*, No. 14-CV-3084, 2017 WL 1831103, at *15 (S.D.N.Y. May 5, 2017) (citation, alterations, and quotation omitted). "This duty to develop the record is particularly important where an applicant alleges he is suffering from [] mental illnesses, due to the difficulty in determining whether these individuals will be able to adapt to the demands or stress of the workplace." *Hidalgo v. Colvin*, No. 12-CV-9009, 2014 WL 2884018, at *4 (S.D.N.Y, June 25, 2014) (citation and quotation marks omitted). "[I]n some cases, the nature of the record may render re-contacting the treating physician the best, if not the only, way to address gaps or inconsistencies in the record, such that it is

incumbent upon the ALJ to do so." *Gabrielsen v. Colvin*, No. 12-CV-5694, 2015 WL 4597548, at *6 (S.D.N.Y. July 30, 2015); *see also Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013) ("To the extent [the] record is unclear, the Commissioner has an affirmative duty to fill any gaps in the administrative record before rejecting a treating physician's diagnosis." (citation and quotation marks omitted)); *Burgess*, 537 F.3d at 129 ("In light of the ALJ's duty to affirmatively develop the administrative record, an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." (citation and quotation marks omitted)); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ("First, even if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from the [treating physician] sua sponte." (citation and italics omitted)).[10]

_____

[10] The Commissioner argues that "[u]nder these circumstances, there was no reason to think that Dr. Megarr's omission from the treatment notes produced by Doctors United was anything more than due to the fact that he did not provide significant treatment to Plaintiff during the relevant time period, and there were no obvious gaps in the record requiring further development." (Comm'r's Obj. 21 (citations and quotation marks omitted)). Plaintiff's counsel may have represented that any gaps in the record that needed to be addressed were not those regarding Dr. Megarr, (Administrative Record 39–42), but that alone did not permit the ALJ to reject Dr. Megarr's opinion because "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Rosa*, 168 F.3d at 79 (citation omitted). The cases that the Commissioner cites in support of its objection either support Plaintiff's argument that the ALJ had an affirmative duty to build the record as to Dr. Megarr's opinion or, unlike here, indicate that there was some effort made to obtain the records in question, thereby satisfying the ALJ's duty. *See Rosa*, 168 F.3d at 79–80 (holding that the ALJ *should* have "taken steps directing [the plaintiff] to ask [the doctor] to supplement his findings with additional information" before concluding that the doctor's opinion "lack[ed] [] support for his ultimate diagnosis of complete disability (citation omitted)); *Gonzalez v. Colvin*, No. 15-CV-767, 2018 WL 1040250, at *4 (W.D.N.Y. Feb 24, 2018) (declining to review ALJ's finding where hearing counsel personally offered to obtain missing records and failed to do so); *Lynn v. Comm'r of Soc. Sec.*, No. 11-CV-917, 2013 WL 1334030, at *13 (E.D.N.Y. Mar. 30, 2013) ("The ALJ requested [the plaintiff's] psychiatric records, kept the record open for submission of those documents, and neither [the plaintiff] nor his counsel ever contacted the ALJ requesting additional time or any other assistance in obtaining such documents. In these circumstances, the ALJ was entitled to make a decision based on the available record." (citation omitted)); *Rivera v. Comm'r of Soc. Sec.*, 728 F. Supp. 2d 297, 330 (S.D.N.Y. 2010) ("Courts do not necessarily require ALJs to develop the record by obtaining additional evidence themselves,

Thus, Judge McCarthy is correct in concluding that remand is necessary, at which point "the ALJ should make every reasonable effort to obtain records from Dr. Megarr and reassess his opinion taking into account any additional evidence."  (R&R 26–27.)

### iv.  Dr. Tan

On February 22, 2016, Dr. Tan completed a medical source statement, indicating that he had diagnosed Plaintiff with major depressive disorder.  (Administrative Record 630.)  He stated that he treated Plaintiff at a psychiatric clinic since September 2, 2011.  (*Id*.)  Dr. Tan indicated that Plaintiff suffered from severe psychiatric symptoms and extreme losses in her ability to work on a regular and continuing basis in an 8-hour work day.  (*Id.* at 630–33.)  He opined that Plaintiff would miss work more than three times a month due to her impairments or treatments.  (*Id.* at 631.)

The ALJ gave Dr. Tan's opinion "some weight because while he claims to be a treating source, there does not appear to be a long, sustained relationship between Dr. Tan and the claimant reflected in the record."  (Administrative Record 25.)  Moreover, "Dr. Tan does not define or explain his proposed limitations," and the ALJ did "not see many treatment notes with Dr. Tan."  (*Id.* (citation omitted).)  Judge McCarthy concluded that "the onus was on the ALJ to contact Dr. Tan to clarify any ambiguities or vagueness in his opinion and to request treatment records" and that because there were "no documented attempts by the ALJ" to do so, the ALJ's finding supports remand.  (R&R 27 (citations omitted).)

---

but often permit them to seek it through the claimant or his counsel;" however, where "the ALJ gave plaintiff's counsel three additional weeks to obtain and submit these records, with the instruction to request more time if he needed it, and plaintiff's counsel failed to submit anything or to request more time," the ALJ "fulfilled his obligations with regard to developing the record." (citations omitted)).

The record is unclear as to whether Dr. Tan himself treated Plaintiff since 2011, noting only that the Plaintiff had been "treated at [a] psychiatric clinic since 9/2/2011." (Administrative Record 630.) However, the Commissioner's objection cites this statement in support of the conclusion that "Dr. Tan's opinion simply states that Plaintiff had been treated at the psychiatric clinic since 2011, not that he himself frequently treated her" and that therefore, the ALJ was not incorrect in "discounting Dr. Tan's opinion on the basis that he appeared not to himself have had a long sustained relationship in treating Plaintiff." (Comm'r's Obj. 22 (citations and quotation marks omitted)). However, since the Administrative Record was ambiguous about how long Dr. Tan has personally treated Plaintiff, further clarification with respect to this issue was necessary. *See Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 267–68 (S.D.N.Y. 2016) (holding that ALJ "did not fulfill his duty to develop the record" where the record did not contain any of a treating psychiatrist's treatment records); *Corporan v. Comm'r of Soc. Sec.*, No. 12-CV-6704, 2015 WL 321832, at *4–5, 5 n.2 (S.D.N.Y. Jan. 23, 2015) (remanding an ALJ's decision for further proceedings where it was unclear whether a doctor could properly be classified as a treating physician because the "ALJ was required to resolve this ambiguity" through building the record). Judge McCarthy is correct in concluding "the onus was on the ALJ to contact Dr. Tan to clarify any ambiguities or vagueness in his opinion and to request treatment records," especially considering that the ALJ acknowledged the discrepancies in the information in the record and maintained that she did not want to "speculate" about the relationship between Dr. Tan and Plaintiff, yet nonetheless did not seek these treatment records pertaining specifically to this relationship.[11]

---

[11] The ALJ's explicit statement that she was unsure about the nature of Dr. Tan's relationship with Plaintiff, (Administrative Record 25), undermines the Commissioner's argument that the 100 pages from the Bronx Mental Health Clinic sufficed as evidence that the

<u>v.  Letters from the Federal Employment and Guidance Service</u>
<u>("FEGS") Report</u>

A report from FEGS, dated December 27, 2013, and signed by FEGS social worker,

Agatha Irish, states that FEGS was in possession of letters from Stand-Up MRI of the Bronx,

dated March 20, 2013; Union Community Health Center, dated April 24, 2013; and FEGS, dated

June 15, 2013.  (Administrative Record 415, 418.)  As summarized by the FEGS report, the

letters noted that Plaintiff suffered from fibromyalgia and left shoulder pain.  (*Id.* at 418.)

According to the FEGS report, "due to these conditions [Plaintiff] cannot lift or carry more than

5 pounds [and] she cannot reach objects or climb using her arms."  (*Id.* at 418–19.)

The ALJ gave the opinion from the FEGS report "little weight because it is very vague"

and inconsistent with Plaintiff's report that she could lift no more than 26 pounds.  (*Id*. at 24–25.)

Judge McCarthy concluded that "[t]he ALJ dismissed the summary of the opinions contained in

the FEGS report as 'very vague,' but there is no evidence that she attempted to obtain the

underlying letters" and because "the letters are not included in the record[,]. . . there is no

information in the record concerning the author of the opinions such as their qualifications and

relationship with Plaintiff."  (R&R 28.)  Moreover, "[t]he FEGS report's reference to three

letters containing medical opinions regarding Plaintiff's impairments created an obvious gap in

the administrative record at the time the ALJ issued her decision."  (*Id*.)  Therefore, "[t]he ALJ

should have attempted to obtain the letters and, if she still deemed them vague, she should have

contacted the provider or otherwise provided good reasons for discounting them."  (*Id.*)  Judge

McCarthy recommended "that this should be done on remand."  (*Id*.)

---

record did not need further development concerning Dr. Tan's relationship with Plaintiff,
(Comm'r's Obj. 22.)  Specifically, only one of the pages among the 100 that the Commissioner
cites references Dr. Tan.  (*See* Administrative Record 816.)

The Commissioner argues that the ALJ was not required to consider the letters, as they were dated before the relevant time period; specifically, the letters from Union Community Health Center are dated April 24, 2013; the letters from FEGS are dated June 15, 2013; and the letters from Stand-Up MRI of the Bronx are dated March 20, 2013.  (Comm'r's Obj. 22–23; Administrative Record 418.)  "The relevant time period for an SSI benefits application is the date the SSI application was filed, to the date of the ALJ's decision."  *Williams v. Colvin*, 98 F. Supp. 3d 614, 631–632 (W.D.N.Y. 2015) (citation, quotation marks, and alteration omitted).  Plaintiff applied for SSI on February 14, 2014, alleging she was disabled since December 1, 2012. (Administrative Record 15).  Therefore, remand to obtain the letters or contact the provider is not necessary.[12]  *See Williams*, 98 F. Supp 3d at 631 ("The ALJ was not required to evaluate the opinions of [two doctors] because those opinions pre-date the relevant time period in this case." (citation omitted)); *Kentile v. Colvin*, No. 13-CV-880, 2014 WL 3534905, at *14 n.10 (N.D.N.Y July 17, 2014) ("The administrative record contains treatment notes from other providers. However, the ALJ is not compelled to consider or assign weight to treatment that predates plaintiff's application for disability benefits." (citations omitted)).  Accordingly, on remand, it is not necessary for the ALJ to consider the FEGS letters or further articulate its evaluation of the letters, and the Court does not adopt Judge McCarthy's recommendation on this point.  (*See* R&R 28.)

### 2.  Plaintiff's Credibility

The ALJ concluded that, at her hearing, although "the claimant testified to significant physical limitations and pain, which she alleges render her unable to work," "the medical

---

[12] Thus, the Court will not address the Commissioner's objection that "[a]lthough not required to analyze the opinions, the ALJ nonetheless considered and discounted them as unsupported."  (Comm'r's Obj. 23.)

evidence simpl[y] does not substantiate the level of restriction asserted by the claimant."

(Administrative Record 23.)  Here, the ALJ found Plaintiff's testimony not credible due

inconsistencies in the record regarding her abilities in day-to-day living.  (*See id*.)  For example,

the ALJ found Plaintiff's claim that she had difficulty performing activities of daily living

inconsistent with her statements that she could cook, shop, socialize, walk, take public

transportation, manage money, and lift a gallon of milk.  (*Id*.)  As evidence of inconsistencies,

the ALJ relied upon portions of the third-party function report of Angela Corona that supported

the ALJ's credibility analysis, such as statements that Plaintiff could prepare simple meals, shop,

socialize and walk four blocks.  (*Id*.)  However, the ALJ simultaneously discounted other

portions of Ms. Corona's report on the basis that Ms. Corona "probably does not observe the

claimant at home and therefore does not have first-hand knowledge of the claimant's sleeping

habits or walking limitations."  (*Id.* at 23–24).  Judge McCarthy concluded that the ALJ's

conclusion "merits review."  (R&R 28.)  According to Judge McCarthy, "[t]he ALJ disregarded

Plaintiff's statements to Ms. Corona that she was unable to dress herself, often skipped baths due

to the pain, could no longer cook on a daily basis, and required the assistance of her children for

traveling, shopping, and cleaning."  (*Id*. at 29–30 (citation omitted)).  Judge McCarthy concluded

that "[i]t was error for the ALJ to rely upon the portions of Ms. Corona's report that support the

ALJ's credibility conclusions while assigning little weight to the portions of the report that are

suggestive of disability."  (*Id*. at 30 (citation omitted).)  Judge McCarthy also noted that, "while

the ALJ relied upon Plaintiff's statement at the hearing that she could lift a gallon of milk, the

ALJ omitted Plaintiff's clarification that she needed to put it down immediately" and that the

ALJ "highlighted Plaintiff's statements to Dr. Nikkah on April 3, 2014 that . . . she could dress,

bathe and groom herself," while omitting "the caveat Plaintiff provided to Dr. Nikkah that she

relied upon her daughters for assistance in her daily tasks and that she had difficulties with her daily activities due to distractibility, lack of motivation, pain, and limited mobility." (*Id.*)

According to Judge McCarthy, "the ALJ's reasoning for discounting the ample opinion testimony that supported Plaintiff's statements concerning her limitations was problematic." (*Id.*) She notes that although "an ALJ's determination with respect to the credibility of witnesses is generally given great deference because the ALJ heard the testimony and observed the demeanor of the witnesses, in this case, Plaintiff appeared in front of the ALJ by video, potentially reducing the ALJ's ability to discern nuance in credibility observations." (*Id.* (citations, alterations, and quotation marks omitted).) The Commissioner objects to Judge McCarthy's recommendation "that the ALJ failed to properly analyze Plaintiffs credibility." (Comm'r's Obj. 23.)

### a. Applicable Law

"Evidence of pain is an important element in the adjudication of [social security] claims, and must be thoroughly considered in calculating the [residual functional capacity ("RFC")] of a claimant." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (citation omitted); *see also* 20 C.F.R. § 416.929. In calculating RFC, "the ALJ is required to take the claimant's report of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence in the record." *Id.* (citation omitted); *see also Henningsen v. Comm'r of Soc. Sec.*, 111 F. Supp. 3d 250, 267 (E.D.N.Y. 2015) ("The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and 'to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent

of the pain alleged by the claimant.'" (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979))).

To evaluate a claimant's credibility, the ALJ must follow a two-step process. First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier*, 606 F.3d at 49 (citation omitted). Second, "the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Id.* (citation, alterations, and quotation marks omitted). In so doing, the ALJ must "consider all of the available medical evidence, including a claimant's statements, treating physician's reports, and other medical professional reports." *Fontanarosa v. Colvin*, No. 13-CV-3285, 2014 WL 4273321, at *12 (E.D.N.Y. Aug. 28, 2014) (citing *Whipple v. Astrue*, 479 F. App'x 367, 370–71 (2d Cir. 2012)). Where the other medical evidence is not consistent with the claimant's subjective statements, the ALJ must consider seven additional factors:

> (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain.

*Id.* at *12 n.21 (quoting 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

Should the ALJ decide to reject or discount a claimant's testimony on credibility grounds, the ALJ must "explain the decision . . . with sufficient specificity to enable the reviewing [c]ourt to decide whether there are legitimate reasons for the ALJ's disbelief and whether the ALJ's decision is supported by substantial evidence." *Kuchenmeister v. Berrhill*, No. 16-CV-7975, 2018 WL 526547, at *12 (S.D.N.Y. Jan. 19, 2018) (citations, quotation marks, and alterations

omitted); *see also Lugo v. Apfel*, 20 F. Supp. 2d 662, 664 (S.D.N.Y. 1998) ("Conclusory determinations [by an ALJ] . . . leave a reviewing court no basis on which to determine whether the proper factors were considered and the appropriate legal standards applied.").

### b. Analysis

Contrary to Judge McCarthy's assertion, (R&R 30), the ALJ did not ignore the fact that Plaintiff said she could lift a gallon of milk but has to put it down right away; specifically, the ALJ noted "[w]hen asked about how much she can lift, she said she could lift a gallon of milk but has to put it down right away." (Administrative Record 22.) The ALJ also highlighted Plaintiff's statements to Dr. Nikkah on April 3, 2014 that supported the ALJ's credibility determination, specifically, "in April of 2014, the claimant reported being able to cook, dress, clean, bathe, groom, manage money, and take public transportation." (Administrative Record 19 (citing Ex. 16F/1-4).) Moreover, the ALJ explicitly mentioned that, according to Dr. Nikkah, Plaintiff "would be able to maintain concentration and attention, but she would have mild limitations in performing complex tasks independently, learning new tasks, and she would have difficulties caused by distractibility and lack of motivation." (*Id*. at 20 (citing Ex. 16F/1-4.)) Finally, although the ALJ did not specifically mention the caveat Plaintiff provided to Dr. Nikkah that she relied upon her daughters for assistance in her daily tasks, the ALJ acknowledged that the evidence indicates that Plaintiff relied on family for support. (*Id.* at 19, 25, 543.) Thus, the ALJ appears to have considered and articulated the relevant factors while generally assessing Plaintiff's credibility. *See Davis v. Berryhill*, No. 17-CV-7052, 2019 WL 989338, at *16 (S.D.N.Y. Mar. 1, 2019) (upholding ALJ's credibility finding where the plaintiff's claimed pain was not consistent with her testimony of being able to perform self-care and take public transportation as needed), *adopted by* 2019 WL 1244929 (Mar. 18, 2019); *Rivas*

*v. Berryhill*, No. 17-CV-5143, 2018 WL 4666076, at *14 (S.D.N.Y. Sept. 27, 2018) (finding that the ALJ's credibility determination properly including consideration of the plaintiff's daily activities, including performing personal hygiene, cleaning, doing laundry, going shopping, and traveling using public transportation); *Bueno v. Comm'r of Soc. Sec.*, No. 17-CV-1847, 2018 WL 5798583, at *15 (S.D.N.Y. Aug. 20, 2018) (finding that the ALJ properly discounted the plaintiff's credibility as her daily activities demonstrated a greater capacity for work than alleged).

Moreover, the ALJ's reference to the specific evidence in the record that contradicts Plaintiff's allegations, (*see* Administrative Record 23), provides sufficient evidence for the Court to "glean the [ALJ's] rationale" in making her credibility determination. *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *see also Kuchenmeister*, 2018 WL 526547, at *12 ("When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." (citation and quotation marks omitted)). Accordingly, there is little basis on which to second-guess the ALJ's credibility determination. *See Alejandro v. Comm'r of Soc. Sec.*, No. 17-CV-2906, 2018 WL 4328839, at *4 (S.D.N.Y. Sept. 11, 2018) (upholding credibility determination where "the ALJ offered reasons why he discounted certain evidence that could have substantiated [the plaintiff's] claims" and "determined that [the plaintiff's] own statements about her daily conduct were inconsistent with her allegations of disability").

Under the substantial evidence standard of review, remand is appropriate only where no reasonable factfinder could have weighed the evidence as the ALJ did. *See McIntyre*, 758 F.3d at 149. That standard is not met here. The R&R articulates disagreements with the ALJ's weighing of some of the evidence, particularly regarding Ms. Corona's report. (R&R 29–30).

To the extent some criticisms have merit, it nevertheless cannot be said that the ALJ's weighing of the evidence going to credibility was irrational or unreasonable.  Where, as here, "evidence is susceptible to more than one rational interpretation, the [ALJ's] conclusion must be upheld." *McIntyre*, 758 F.3d at 149 (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)).  It is "the function of the [ALJ], not the reviewing court[], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant."  *Aponte v. Sec'y, Dep't Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (citation, quotation marks, and alteration omitted).  Further, "[d]eference should be accorded the ALJ's determination because [she] heard [P]laintiff's testimony and observed [her] demeanor."  *Gernavage v. Shalala*, 882 F. Supp. 1413, 1419 n.6 (S.D.N.Y. 1995) (citations omitted); *see also Marquez v. Colvin*, No. 12-CV-6819, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (noting that reviewing courts "must show special deference to an ALJ's credibility determinations because the ALJ had the opportunity to observe [the] plaintiff's demeanor while testifying" (citing *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994))).  Here, the ALJ identified several "specific record-based reasons," (*see* Administrative Record 23), for finding Plaintiff's subjective statements to be only partially credible.  *Stanton v. Astrue*, 370 F. App'x 231, 234 (2d Cir. 2010); *see also Kuchenmeister*, 2018 WL 526547, at *12 ("When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." (citation and quotation marks omitted)).  The ALJ's determination has met this bar, and the Court will not disturb this assessment.  Accordingly, the Court does not adopt Judge McCarthy's recommendation that "the ALJ should also re-evaluate Plaintiff's credibility." (R&R 31.)

### III. Conclusion

For the foregoing reasons, the Court adopts Judge McCarthy's R&R in part. Specifically, the Court adopts Judge McCarthy's recommendations that the ALJ should affirmatively attempt to build the record to resolve ambiguities in the medical opinions of Dr. Hamilton, Dr. Taylor, Dr. Megarr, and Dr. Tan and then, on the basis of that record, properly evaluate and articulate the credibility of each of their medical opinions, referencing the treating physician standard as needed. The case is remanded for further administrative proceedings consistent with this Opinion & Order.

The Clerk of Court is respectfully directed to terminate the pending Motion. (Dkt. No. 14.)

SO ORDERED.

Dated: September 25, 2019
       White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE